UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDY PERKINS,

        Plaintiff,

    v.

A. ADAMS, et al.,

        Defendants.

No.  2:16-cv-01791 JAM CKD P

FINDINGS AND RECOMMENDATIONS

      Plaintiff is a California state prisoner proceeding pro se with this civil rights action filed pursuant to 42 U.S.C. § 1983.  This action is proceeding on the first amended complaint filed September 26, 2016 alleging that defendants Adams and Mansour were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment.   See ECF No. 9 (screening order).  Defendants seek summary judgment on the grounds that there is no genuine issue of material fact in dispute because plaintiff was repeatedly offered a formulary brand of compression stocking for his history of deep vein thrombosis and chronic edema.  ECF No. 40. The motion has been fully briefed by the parties.  See ECF Nos. 46-48, 50.  For the reasons discussed below, the undersigned recommends that defendants' motion for summary judgment be granted as to defendant Mansour and denied as to defendant Adams.

**I.     Allegations in the Complaint**

      In his verified amended complaint, plaintiff describes the history and complications

associated with his treatment for deep vein thrombosis ("DVT") while an inmate at the California Health Care Facility in Stockton ("CHCF").[1]  In July 2015, he was transferred to CHCF where he was medically screened by defendant Dr. Mansour.  ECF No. 8 at 4-5.  During this initial medical screening, plaintiff explained "(1) his DVT condition, (2) the P[leasant] V[alley] S[tate] P[rison]/'Ted Hose' treatment which resulted in stasis ulcers, and (3) the C[alifornia] S[tate] P[rison]-Solano/'Unna Boot' and 'Jobst Stocking' treatment which was ultimately successful."  ECF No. 8 at 4.  As a result of this treatment history, plaintiff requested a replacement of his Jobst compression stocking from defendant Dr. Mansour.  ECF No. 8 at 5.  However, in August 2015, defendant Mansour ordered the Ted hose compression stocking which plaintiff declined to use since it had previously caused him to develop stasis ulcers.  Id.

Plaintiff submitted a health care grievance about Dr. Mansour's failure to provide a Jobst compression stocking.  Id.  This grievance was reviewed and denied by defendant Dr. Adams, the Chief Medical Officer at CHCF.

Plaintiff contends that defendants' decision to provide him with the "failed and harmful" Ted hose instead of the "successful and effective" Jobst compression stocking resulted in him suffering pain in his lower right leg, swelling, blackening of the veins around the right ankle, athletes' foot, skin graft damage, infection, and leg tissue loss."  ECF No. 8 at 6.  By way of relief, plaintiff requests a permanent injunction requiring defendants to provide him with ongoing replacement Jobst compression stockings as well as compensatory and punitive damages.  Id. at 7.

**II.    Motion for Summary Judgement**

In their motion for summary judgment, defendants contend that there is no genuine issue of material fact in dispute concerning plaintiff's Eighth Amendment deliberate indifference claim because he was repeatedly offered a formulary brand of compression stocking that he refused. While defendants do not dispute that plaintiff had a serious medical need based on his history of

---

[1] Even though plaintiff's complaint is verified, it may function as a supporting affidavit for purposes of summary judgment only to the extent that it is "based on personal knowledge and set[s] forth specific facts admissible in evidence."  Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (citations omitted) (holding that a complaint or motion duly verified under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing affidavit under Fed. R. Civ. P. 56).

DVT and chronic edema, they contend that their response to this need did not rise to the level of deliberate indifference. Both defendants assert that the compression stockings kept in stock at CHCF and offered to plaintiff are effective in the treatment of DVT and edema. ECF No. 40-1 at 9. In support of this argument, defendants highlight the decision of other medical staff to deny plaintiff a Jobst compression stocking because it was "not shown to help with Perkins' medical condition more than another brand of compression stocking[]…." Id. at 10. Defendants characterize the conflict over the type of compression stocking available to plaintiff as "nothing more than a difference of opinion" regarding the proper course of medical treatment which is not actionable under the Eighth Amendment. Id. at 9 (citing Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242).

By way of opposition, plaintiff filed a declaration detailing his medical condition which has required the use of a compression stocking on his right lower leg since approximately 1988. ECF No. 46 at 3-4. Plaintiff described his recurring problem with stasis ulcers that developed following a skin graft in 2000 or 2001. Id. at 4. "Each and every time I was provided the much-thinner and far-less evenly supportive TED Hose, the stasis ulcer… would always and invariably re-appear and worsen…." Id. Between 2011 and 2015, when plaintiff was incarcerated at Solano State Prison, he was provided a knee-high Jobst compression stocking which resulted in "no edema (swelling), no pain, no ulceration of any kind, and never once required the application of an Unna Boot" to treat a stasis ulcer. Id. at 5. Along with his declaration, plaintiff submitted a copy of the outer packaging of the "less-expensive and contraindicated TED hose" which indicates that "[a]nti-embolism [s]tockings are not recommended for patients with… open ulcerations, infections, recent vein ligation, skin graft or gangrene in which stockings would interfere…." ECF No. 46 at 13.

In their reply, defendants point out that plaintiff did not provide any "expert testimony establishing that McKesson brand [compression] stockings would be improper in his case or that a skin graft allegedly taking place 'sometime around 2000 and 2001' would mean a McKesson brand stocking was inappropriate fifteen years later." ECF No. 47 at 2. In addition, defendants highlight the lack of any "medical records indicating that the current condition of his leg is the

result of decisions by Dr. Adams or Dr. Mansour three years" earlier to provide him with the McKesson stocking rather than the Jobst compression stocking. Id. at 4. Defendants assert that the type of compression stocking provided to plaintiff does not amount to an Eighth Amendment violation because it is a mere disagreement over the proper course of treatment and because it only establishes, at best, a case of negligent medical care. Id. at 2-3 (citing Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998).

In addition to their reply, defendants filed objections to plaintiff's evidence in opposition to summary judgment. ECF No. 48. Defendants object to a large portion of plaintiff's affidavit on the basis that it is hearsay and that plaintiff lacks the qualifications to provide "opinions regarding medical conditions and diagnoses, their causes, appropriate treatment and prognoses…." ECF No. 48 at 1. In addition, defendants object to plaintiff's statements concerning defendants' "state of mind, motives, or knowledge of particular sources of information. Id. at 1-2.

Plaintiff filed a response to defendants' objections in which he submitted additional evidence including the outer packaging of the Jobst compression stocking listing the contraindications for the product's use as well as portions of his medical records from 2015 and 2016. ECF No. 50. However, the contraindications for the Jobst compression stockings were written in French. See ECF No. 50 at 8. Therefore, the court was unable to determine what evidentiary value this information had in relationship to the pending summary judgment motion. To the extent that plaintiff's medical records are not duplicative of those submitted in conjunction with defendants' summary judgment motion, the court has read and considered them.

It is not the practice of this court to rule on individual evidentiary matters in the context of summary judgment. This is particularly true when "many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." See Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1124 (E.D. Cal. 2006) (explaining that the court should not be required to "identify potential hearsay, and determine if an exception applies—all without guidance from the parties" in evaluating the merits of evidentiary objections on a motion for summary judgment). To the extent that the court relies on evidence that has been objected to, the court has only considered evidence in opposition to

summary judgment that is admissible.  See Fed. R. Civ. P. 56(c)(4); see also Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001) (holding that it was an abuse of discretion for the district court, at the summary judgment stage, to consider information from an affidavit based on inadmissible hearsay rather than the affiant's personal knowledge).

With that said, however, the court finds it necessary to address defendants' objection to the portions of plaintiff's affidavit that contain medical opinions.  The court will not consider as evidence plaintiff's attempts to interpret medical records or his own medical condition and diagnosis.  The interpretation of medical records as well as the determination of the medical cause of various symptoms, involve matters that are scientific, technical, or require other specialized knowledge.  Accordingly, plaintiff may not testify as to these matters as a lay witness.  Fed. R. Evid. 701.  Defendants' objections on this ground are sustained because plaintiff is not a qualified expert witness concerning treatment of injuries or diseases.  See Fed. R. Evid. 701.

**III.    Undisputed Legal Facts**

Plaintiff was transferred to the California Health Care Facility ("CHCF") on July 3, 2015.[2] Defendants' Statement of Undisputed Facts ("DSUF"), at ¶ 1.  He had a history of deep vein thrombosis (DVT) as well as edema, or swelling, in his right leg caused by the accumulation of fluid under his skin.  DSUF at ¶ 2, 4.  People who have DVT are at risk of acquiring a stasis ulcer which is a breakdown of the skin caused by fluid build-up in the skin from poor vein function. DSUF at ¶ 56-57.

Both DVT and edema are commonly treated with the use of compression stockings which apply higher pressure at the ankles and a lower pressure around the knees and thighs.  DSUF at ¶ 5, 8.  By decreasing the pressure strength up the leg, blood is encouraged to flow upwards towards the heart.  DSUF at ¶ 9.  Compression stockings are known by a number of different names such as the generic term "TED hose" or thrombo-embolic-deterrent hose.  DSUF at ¶ 6. They are manufactured by many different companies, including Jobst and McKesson, and come in varying sizes and lengths.  DSUF at ¶ 7, 10.  By wearing a smaller size of compression

---

[2] All facts are undisputed unless otherwise indicated.

stocking, a patient will receive increased compression strength, thus reducing the likelihood of edema or the formation of a blood clot. DSUF at ¶ 11.

At the time plaintiff was transferred to CHCF, he was using a Jobst compression stocking which had been prescribed to treat his DVT and edema since 2011. DSUF at ¶ 12; Deposition of Randy Perkins, at 49, 51. On July 14, 2015, Nurse Kaur, who is not a party to this action, completed an Initial Comprehensive RN Case Management Assessment form for plaintiff indicating that he used TED hose as a health care appliance. See ECF No. 40-7 at 4-5. As is customary when an inmate is transferred to a new prison, a nurse will contact a doctor in telemedicine to discuss any continuity of care issues that could include renewal of medication, the completion of accommodation chronos, or review of lab tests. DSUF at ¶ 15.

Defendant Dr. Mansour was employed as a Physician and Surgeon in the telemedicine division at the headquarters of the California Correctional Health Care Services at all times relevant to this action. Declaration of Mansour, at ¶ 1. On or about August 5, 2015, Dr. Mansour was contacted by medical staff at CHCF regarding plaintiff and the fact that he had arrived at the prison with compression stockings. DSUF at ¶ 16. As a result, Dr. Mansour signed a Comprehensive Accommodation Chrono allowing plaintiff to retain his compression stockings which ensured that they would not be confiscated by custody staff as contraband. DSUF at ¶ 17. Dr. Mansour was not physically present at CHCF when he signed this accommodation chrono nor does he have any recollection of meeting with plaintiff in August 2015. DSUF at ¶ 18. There is no record in plaintiff's medical chart of any examination by, or conversation with, Dr. Mansour in August 2015 concerning ordering plaintiff the Jobst brand of compression stocking. Declaration of Mansour, at ¶ 9.

According to plaintiff, he met with Dr. Mansour sometime in the first two weeks after he arrived at CHCF. DSUF at ¶ 20. During this visit, Dr. Mansour told plaintiff that he would order him compression stockings, although he did not identify what brand. DSUF at ¶ 21. Within 90 days of his transfer to CHCF, plaintiff was offered the TED hose ordered by Dr. Mansour, but he refused to accept them. DSUF at ¶ 22

Plaintiff submitted a Health Care Services Request Form on August 13, 2015 asking to see a

doctor to order a knee-high Jobst extra compression stocking.  ECF No. 40-7 at 11.  On August

28, 2015, plaintiff was seen by Nurse Practitioner Saipher and requested that his compression

stockings be replaced.  DSUF at ¶ 23.  At the time of this examination, plaintiff was wearing the

Jobst compression stocking and Nurse Practitioner Saipher's plan was to re-order the

compression stockings.  DSUF at ¶ 24.

On September 17, 2015, plaintiff submitted another Health Care Services Request Form

complaining that his right leg had been swollen for the past three days and that deep red blisters

had developed on the outside of the upper part of his leg.  ECF No. 40-7 at 13.  As a result,

plaintiff was examined by Dr. Kaur via a telemedicine visit on September 25, 2015.  DSUF at ¶

25; ECF No. 40-7 at 14 (Primary Care Provider Progress Note).  During this visit, it was noted

that plaintiff's compression stocking was "last replaced 6 months ago" but was re-ordered.  DSUF

at ¶ 26; ECF No. 40-7 at 14.

Plaintiff submitted a Health Care Services Request Form on October 13, 2015 indicating

that although a replacement compression stocking had been ordered "over 60 days ago," he had

yet to receive it.  ECF No. 40-7 at 15.  Plaintiff indicated that his "leg is swelling and the old

stocking isn't giving me the support that's need[ed]."  Id.  On October 29, 2015 plaintiff was

again seen by Dr. Kaur via a telemedicine visit.  DSUF at ¶ 27.  Dr. Kaur completed a request for

services form for Jobst brand compression stockings for plaintiff on the same date as this visit.

DSUF at ¶ 28.

Defendant Dr. Adams was the Chief Medical Executive at CHCF at all times relevant to

this action.  Declaration of Adams, at ¶ 1.  In this capacity, Dr. Adams is responsible for

reviewing requests by doctors at CHCF to provide medical services to inmates, including requests

for non-formulary medical devices.  Id. at ¶ 2.  On November 3, 2015, Dr. Adams denied Dr.

Kaur's request to order Jobst compression stockings for plaintiff.  DSUF at ¶ 29.  In her written

denial, Dr. Adams indicated that the compression stockings plaintiff had were over ten months

old and that they should be replaced with formulary compression stockings in order to determine

their effectiveness before requesting non-formulary Jobst stockings.  DSUF at ¶ 30.  According to

Dr. Adams, the compression stockings kept in stock at CHCF are effective in the treatment of

DVT and edema, as well as in preventing stasis ulcers, and are commonly prescribed for these conditions.  Declaration of Adams, at ¶ 7.

Plaintiff was seen by Nurse Practitioner Saipher on November 10 and 17, 2015 for complaints of right leg pain.  ECF No. 40-7 at 18-20.   Nurse Practitioner Saipher's plan was to re-order the Jobst compression stockings because the "[r]egular TED hose slip down, probably due at least in part to the unusual size and muscularity of his calves."  ECF No. 40-7 at 18 (Primary Care Provider Progress Note).

Medical records indicate that a nurse offered plaintiff compression stockings manufactured by McKesson on December 1, 2015, but plaintiff stated that he "can't wear those" because "it doesn't give me the support I need."  DSUF at ¶ 34.

Plaintiff requested Jobst brand compression stockings from Dr. Kaur again on January 27, 2016 as well as February 19, 2016.  DSUF at ¶ 35, 36.  Dr. Kaur noted during the February 19th examination that plaintiff's compression stockings were getting loose.  DSUF at ¶ 37.  So Dr. Kaur completed another request for services for "extra strength TED hose compression stockings on February 23, 2016.  DSUF at ¶ 38.  This request was denied by defendant Dr. Adams on February 26, 2016 because she needed more information, including what size compression stocking was being requested and whether it should be thigh-high or knee-high.  DSUF at ¶ 39.

On March 2, 2016, Dr. Adams also reviewed plaintiff's inmate grievance regarding the denial of a Jobst compression stocking.  DSUF at ¶ 40-41.  In ruling on the grievance, Dr. Adams noted that plaintiff had been offered the compression stockings that CHCF had in stock, but that plaintiff refused them.  DSUF at ¶ 42.  Dr. Adams also noted that plaintiff's request for a Jobst brand compression stocking was not medically necessary.  DSUF at ¶ 43.  According to Dr. Adams, a particular brand of compression stocking is not likely to be more or less effective in treating DVT or edema, or in the prevention of stasis ulcers, when compared to another brand. Declaration of Adams, at ¶ 7.

During an April 20, 2016 telemedicine visit with Dr. Kaur, plaintiff was advised to try a small size compression stocking for more effective control of his swelling.  DSUF at ¶ 47.  The next day plaintiff was seen by a nurse and was again offered compression stockings and

8

instructed to try a smaller size to create more pressure before a Jobst compression stocking would be approved.   DSUF at ¶ 49.  Plaintiff refused the non-Jobst compression stocking because "they're inadequate in the treatment of my DVT and they will cause me a lot of emotional pain and more damage to my leg."  DSUF at ¶ 49; ECF No. 40-7 at 30.

On July 18, 2016 during a telemedicine visit with Dr. Kaur, plaintiff was still attempting to obtain Jobst compression stockings, but there were no acute issues noted related to his right leg edema.  DSUF at ¶ 50-51.

Plaintiff was seen by Physician Assistant Siahaan on November 15, 2016 and requested a replacement of his Jobst compression stocking.  DSUF at ¶ 54.  At this visit, plaintiff denied any acute changes in his medical condition and indicated that the regular compression stocking caused him to develop a stasis ulcer in the past.  DSUF at ¶ 55, 61.  Physician Assistant Siahaan noted swelling in plaintiff's right leg and completed a request for services form for a new Jobst compression stocking.  DSUF at ¶ 62, 64.  This request was denied by supervising medical staff on November 28, 2016 on the grounds that the Jobst compression stocking was not shown to help with stasis ulcers more than the regular compression stockings.  DSUF at ¶ 65.

According to plaintiff, he started experiencing "a lot of pain" and "the limp came back" to his right leg as his Jobst compression stockings wore out without being replaced.  Deposition of Perkins, at 61.  In November 2016, plaintiff developed another stasis ulcer and had to wear an Unna boot for months before it healed.[3]  Deposition of Perkins, at 62-63, 68.

## IV.  Legal Standards

### A.  Summary Judgment

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

---

[3] Although defendants' motion for summary judgment was filed on April 23, 2018, the last medical record of plaintiff that accompanied the motion was dated November 15, 2016.

1  purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R.

2  Civ. P. 56(c)(1)(A).

3      Summary judgment should be entered, after adequate time for discovery and upon motion,

4  against a party who fails to make a showing sufficient to establish the existence of an element

5  essential to that party's case, and on which that party will bear the burden of proof at trial.  See

6  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an

7  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

8  Id.

9      If the moving party meets its initial responsibility, the burden then shifts to the opposing party

10  to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec.

11  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

12  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

13  of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

14  and/or admissible discovery material, in support of its contention that the dispute exists or show

15  that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed.

16  R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

17  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

18  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

19  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

20  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

21  party.  See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

22      In the endeavor to establish the existence of a factual dispute, the opposing party need not

23  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

24  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

25  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

26  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

27  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

28  amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## B. Eighth Amendment Deliberate Indifference Standard

Plaintiff's claims, which arise under the Eighth Amendment, have two elements: proof that plaintiff had a "serious medical need" and that defendants acted with "deliberate indifference" to that need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).

Mere negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). In addition, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)). Nor does a dispute between a

prisoner and prison officials over the necessity for, or extent of, medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). In order "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the inmate's] health.'" Toguchi, 391 F.3d at 10158 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

## V.     Analysis

Since defendants concede that plaintiff had a serious medical need based on his history of DVT and chronic edema, their motion for summary judgment hinges on whether, based upon the evidence now before the court, a rational jury could conclude that defendants responded to plaintiff's serious medical need with deliberate indifference. Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.

### A.   Defendant Mansour's Response to Plaintiff's Serious Medical Need

On defendants' motion for summary judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor. After having done so, the court finds that plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with respect to his claim that defendant Mansour responded to his serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106. No triable factual dispute exists as to whether Dr. Mansour was deliberately indifferent to plaintiff's serious medical need for a Jobst compression stocking because the decision to provide the Jobst compression stocking did not rest with plaintiff's treating physician, but with supervisory doctors responsible for approving the use of a non-formulary medical device. Accordingly, there is no genuine issue of material fact as to whether defendant Dr. Mansour was deliberately indifferent to plaintiff's medical needs by failing to order the Jobst compression stocking.

### B.   Defendant Adams' Response to Plaintiff's Serious Medical Need

The Eighth Amendment inquiry turns on whether defendant Adams' decisions to deny

12

plaintiff a Jobst compression stocking on three separate occasions were made in conscious

disregard of an excessive risk to his health. There is substantial evidence in the record that Dr.

Adams was aware of plaintiff's risk of developing swelling and a stasis ulcer based on his lengthy

medical history of DVT and chronic edema. "In order to prevail on a claim involving choices

between alternative courses of treatment, a plaintiff must show that the course of treatment the

doctors chose was medically unacceptable under the circumstances and that they chose this

course in conscious disregard of an excessive risk to plaintiff's health. Toguchi v. Chung, 391

F.3d 1051, 1058 (9th Cir. 2004) (affirming summary judgment where evidence showed difference

of medical opinion as to choice of one drug over another); Jackson v. McIntosh, 90 F.3d 330, 332

(9th Cir. 1996) (citing Farmer, 511 U.S. at 837). Here, defendant Adams argues that denying

plaintiff a Jobst compression stocking was medically acceptable because she was not the only

medical supervisor who denied his requests. ECF No. 40-1 at 10. This argument suggests that

somehow the issue boils down to the number of medical professionals who agree with her

decision. In this case, while one additional unidentified medical supervisor also denied plaintiff's

request for a Jobst compression stocking, there are other medical professionals including Dr.

Kaur, Nurse Practitioner Saipher, and Physician Assistant Siahaan who all requested either a

Jobst compression stocking or extra-strength TED hose for plaintiff. Reviewing the record as a

whole, this is not simply a case of a dispute between a prisoner and a prison official over the

necessity of a particular medical treatment. See Toguchi, 391 F.3d at 1058. Nor is it just a battle

of different opinions of medical professionals. Here, the record taken as a whole could lead a

rational trier of fact to find for plaintiff. See Snow, 681 F.3d at 987. In this case, crediting

plaintiff's deposition testimony, which this court must accept since he is the nonmoving party at

the summary judgment stage, there is evidence that plaintiff not only suffered additional

unnecessary pain, but also that he developed a new stasis ulcer due to the multiple denials of a

replacement Jobst compression stocking by defendant Adams. See Matsushita, 475 U.S. at 587

(citation omitted). Accordingly, defendant Adams' motion for summary judgment should be

denied.

/////

**VI.    Plain Language Summary for Pro Se Party**

Since plaintiff is acting as his own attorney in this case, the court wants to make sure that the words of this order is understood. The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the pending motion for summary judgment as well as the evidence submitted by the parties and has concluded that the facts of your case are not sufficiently in dispute to warrant a trial against defendant Mansour. However, there is a sufficient factual dispute concerning the Eighth Amendment deliberate indifference claim against defendant Adams. You have fourteen days to explain to the court why this is not the correct outcome in your case. If you choose to do this you should label your explanation as "Objections to Magistrate Judge's Findings and Recommendations." The district court judge assigned to your case will review any objections that are filed and will make a final decision on the motion for summary judgment.

In accordance with the above, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 40) be granted as to defendant Mansour and denied as to defendant Adams.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 22, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/perk1791.msj.docx

14